IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DOUG BOEDICKER,
Plaintiff,

vs. Case No. 16-2213-JTM

MIDLAND CREDIT MANAGEMENT, INC.,
Defendant.

MEMORANDUM AND ORDER

Plaintiff Doug Boedicker brings this action alleging that a debt collection letter sent by Midland Credit Management was false and deceptive under the Fair Debt Collections Practices Act (FDCPA) because the letter did not warn him that payment on the debt could have the effect of renewing the governing statute of limitations period under Kansas law. Both parties have moved for summary judgment. For the reasons provided herein, the court will grant summary judgment in favor of Midland.[1]

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party. *McKenzie v. Mercy Hospital*, 854 F.2d 365, 367 (10th Cir. 1988). The party moving for summary

[1] In addition to the present action, an identical Midland letter has produced a similar claim in *Harris v. Midland Credit Mgt.*, No. 16-2289-JTM. The two actions have been consolidated; this is the lead action. The parties have entered the same stipulation of facts in *Harris*, and filed summary judgment motions (Dkt. 14, 16) raising the same issues presented in this action. The court will enter a separate order in *Harris* adopting the findings and conclusions of the present order.

judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884, 885 (10th Cir. 1985). The moving party need not disprove plaintiff's claim; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir. 1987).

In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a **genuine issue for trial**.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis in *Matsushita*). One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

T-Mobile and Boedicker entered into a contract on November 10, 2004. T-Mobile agreed to extend credit to Boedicker, who agreed to pay T-Mobile for the use of the credit, including interest and other charges.

Boedicker last made a payment on this debt on March 29, 2012. Due to non-payment, T-Mobile charged off the debt on July 18, 2012.

On April 23, 2013, Midland Funding bought the debt. Midland Credit Management, has serviced the debt on behalf of Midland Funding.

Based on the March 29, 2012 payment, the statute of limitations for filing a lawsuit

to collect on the Debt would have expired in 2015. Midland Credit's internal notes confirm that the statute of limitations expired in 2015.

On December 31, 2015, Midland Credit wrote to Boedicker. The letter announced that it was a communication from a debt collector and was an attempt to collect a debt. The letter stated:

> The law limits how long you can be sued on a debt. Because of the age of your debt, we will not sue you for it. If you do not pay the debt, we may continue to report it to the credit reporting agencies as unpaid.

The letter offered payment options and stated that "we are not obligated to renew this offer." The letter did not threaten litigation, and did not use the term "settlement" or "settle."

The letter did not discuss the legal effect of making a payment or promising to make a payment to Midland Credit. The letter also did not inform Boedicker of the legal effect of agreeing to pay the underlying debt or of making a partial payment.

At the time of the letter, and to the present day, Midland Credit and Midland Funding had a written policy providing that, after a debt was out of the statute of limitations, they would not use any payments to recalculate the statute of limitations, even if state law would revive the limitations period. The policy in effect on December 31, 2015 provided:

> Payment will only update the Estimated SOL Expiration Date [the estimated date, as calculated by the Company's algorithms, after which no further legal action may be initiated, as determined by state law] if the account is within the limitations period when the payment is received and the state allows for the extension of the SOL on receipt of a payment. If a payment is received after the Estimated SOL Expiration Date, that payment is never used in the SOL calculation, even if allowed by law.

Midland written policy also provided that lawsuits must not be initiated to collect debts that are outside the statute of limitations.

As of July 15, 2016, the debt remained outstanding and unpaid. For purposes of the FDCPA, Boedicker is a consumer and Midland Credit is a debt collector.

Midland Funding and Midland Credit are subsidiaries of Encore Capital Group. On September 9, 2015, the Consumer Financial Protection Bureau issued a Consent Order against Encore.[2]

Boedicker argues that the December 31, 2015 letter is deceptive on its face, because making a partial payment on a debt outside the statue of limitations will revive the debt, rendering it enforceable. K.S.A. § 60-520. The FDCPA prohibits the use of "any false, deceptive or misleading representations or means in connection with the collection of any debt." 15 U.S.C. § 1692e(2)(a). Whether a communication is deceptive is "measured by how the 'least sophisticated consumer' would interpret the notice received from the debt collector." *Ferree v. Marianos*, 1997 WL 687693, at *1 (10th Cir. Nov. 3, 1997). Under this test, courts look to "how the least sophisticated consumer—one not having the astuteness of a 'Philadelphia lawyer' or even the sophistication of the average, everyday, common consumer—understands the notice he or she receives." *Id.* (citation and quotation omitted). But even the least sophisticated consumer "'can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care.'" *Id.* (quoting *Clomon v. Jackson,* 988 F.2d 1314, 1319 (2d Cir.1993)). This court has determined that "whether the language in a collection letter is confusing or misleading to the least sophisticated consumer under § 1692e is a question of law that is appropriately resolved on summary judgment." *Yang v. Midland Credit Mgmt*., No. 15-2686-JAR, 2016 WL 393726, (D. Kan. Feb. 2, 2016) (citing *Kalebaugh v. Berman & Rabin, P.A.*, 43 F.Supp.3d 1215, 1220 (D. Kan. 2014)).

Boedicker cites three court decisions suggesting that a debt collector should provide additional information. *See Pantoja v. Portfolio Recovery Associates*, LLC, 78 F. Supp. 3d 743, 746 (N.D. Ill. Jan. 14, 2015); *Buchanan v. Northland Grp*., 776 F.3d 393, 395 (6th Cir. 2015);

---

[2] *See* http://files.consumerfinance.gov/f/201509_cfpb_consent-order-encore-capital-group.pdf

*McMahon v. LVNF Funding*, 744 F.3d 1010, 1013 (7th Cir. 2014). However, a review of these decisions establishes that they are distinguishable in important respects from the present case.

In *Pantoja*, the court concluded that the letter send by the defendant was "deceptive because it does not tell the consumer that the debt is time-barred and defendant cannot sue plaintiff to collect it, rather, it implies that defendant has chosen not to sue." 78 F.Supp.3d at 746. However, the letter sent in Pantoja explicitly represented itself as an "offer[] to settle," implying the existence of a dispute that might be litigated, and contained no statement or notice regarding the existence of the statute of limitations. *Id*. at 745. In the present case, the plaintiff does not dispute Midland's contention that its letter did not threaten litigation, and did not use the term "settlement" or "settle." Moreover, Midland's letter expressly noted the existence of the statute of limitations.

In *McMahon*, the court observed in dicta that a debt collection letter could be deceptive if it suggested that the sender "*could* sue on a timebarred debt but was promising to forbear," acknowledging that such a conclusion would be contrary to that reached in other Circuits. 744 F.3d at 1020-21 (emphasis in original, and citing *Huertas v. Galaxy Asset Mgmt*., 641 F.3d 28, 33 (3d Cir.2011); *Freyermuth v. Credit Bureau Servs*., 248 F.3d 767, 771 (8th Cir.2001)). However, the *McMahon* court decided it need not resolve the issue because:

> [i]n any event, the case before us is nowhere near that line. Neither LVNV nor CMS gave a hint that the debts that they were trying to collect were vulnerable to an ironclad limitations defense.... The fact that both Delgado and McMahon's letters contained an offer of settlement makes things worse, not better, since a gullible consumer who made a partial payment would inadvertently have reset the limitations period and made herself vulnerable to a suit on the full amount. That is why those offers only reinforced the misleading impression that the debt was legally enforceable.

*Id.* at 1021. Again, the letter in the present case contained no offer of settlement, and contains far more than a hint regarding the statute of limitations. The letter told Boedicker that "The law limits how long you can be sued on a debt," and stated that Midland "we will not sue you."

In *Buchanan*, the defendant's letter included a "settlement offer" which did not include any suggestion that any debt was time-barred under Michigan law. The court held that the deceptiveness of the communication was a question of fact for the jury, in part because of the inclusion of the term "settlement" —

> a "settlement offer" with respect to a time-barred debt may falsely imply that payment could be compelled through litigation. Formal and informal dictionaries alike contain a definition of "settle" that refers to concluding a lawsuit. On the formal side, one defines the verb as "to conclude (a lawsuit) by agreement between the parties usu[ally] out of court." Webster's Third New International Dictionary 2079 (2002). Another defines it as "[t]o decide (a case) by arrangement between the contesting parties." OED Online, Oxford University Press (September 2014), A third defines "settlement" as "[t]he resolution of a lawsuit or dispute by settling." The American Heritage Dictionary of the English Language (5th ed.2014).. On the informal side, Wiktionary defines "settlement agreement" as "[a] contractual agreement between parties to actual or potential litigation by which each party agrees to a resolution of the underlying dispute." Dictionary.com defines "settle" as "to terminate (legal proceedings) by mutual consent of the parties." Perhaps the best definition, one that accounts for the various ways an everyman individual might read the terms, appears oddly enough in BLACK'S LAW DICTIONARY. It acknowledges that the word is one of "equivocal meaning," "meaning different things in different connections, and the particular sense in which it is used may be explained by the context or surrounding circumstances." BLACK'S LAW DICTIONARY 1372 (6th ed.1990). All of these definitions make it plausible to allege that a "settlement offer" falsely implies that the underlying debt is enforceable in court.

776 F.3d at 399 (internet citations omitted).

The court stressed two additional points. First, the plaintiff in *Buchanan* had identified a prospective expert who would testify "about consumers' attitudes toward, and their understanding of, time-barred debt." *Id.* at 398. Questions of the admissibility of such testimony under *Daubert* was premature, the Court of Appeals held, since the district court had dismissed the action prior to discovery. "For now, it suffices to say that parties who wish to present evidence in support of their claim usually will be given an opportunity to do so, making summary judgment, not a motion to dismiss, the relevant time for ascertaining whether the claim should be resolved as a matter of law." *Id.*

Second, the *Buchanan* court noted ongoing efforts by the FTC and the Consumer Financial Protection Bureau (CFPB) to define the proper nature of communications by debt

collectors regarding time-barred debts. The court stressed the fact that the question was currently under study by these agencies, with the CFPB "collecting public comments" and "plan[ning] to conduct its own "consumer testing and other research." *Id.* (citing Debt Collection (Regulation F), 78 Fed.Reg. 67,875-76). As a result, "[a]t this preliminary stage of the case, it seems fair to infer that, if the agency deems these same questions worthy of further study, Buchanan deserves a shot too."

All of these facts are absent from the present case. The Midland letter was not a "settlement offer." The matter is submitted not as a motion to dismiss, but on summary judgment, and plaintiff has not proffered any expert testimony in support of his claim of deception. And, as noted below, the relevant administrative agencies have approved debt collection communications which essentially match the Midland latter.

In contrast to the distinguishable authorities cited by plaintiff, there are numerous decisions generally indicating that similar collection letters are not deceptive under the FDCPA. In *Filgueiras v. Portfolio Recovery Assocs.*, No. 15-8144, 2016 WL 1626958, *11 (D.N.J. Apr. 25, 2016) the court found that a letter written by the defendant did not violate the FDCPA. The court stressed that "[a]lthough the 2015 Letter offers "Single Payment Savings" and states that "your account will be considered 'settled in full' after your payment is successfully posted," crucially, it further states that "[b]ecause of the age of your debt, *we will not sue you for it*." (Emphasis in original). Other cases have reached similar conclusions. *See Olsen v. Cavalry Portfolio Servs.*, LLC,2016 WL 4248009, *2 (M.D. Fla. Aug. 11, 2016) ("the FDCPA imposes on Cavalry no duty to advise Olsen of potential defenses, including the expired limitation or the consequence of partial payment"); *Ehrich v. Convergent Outsourcing*, 2015 WL 6470453, at *3 (S.D. Fla. Oct. 28, 2015)("Because Convergent did not initiate or threaten legal action in connection with its debt collection efforts, it was entitled to seek voluntary repayment of the time-barred debt."); *Schaefer v. ARM Receivable Mgmt.*, 2011 WL 2847768, *4 (D. Mass. July 19, 2011) (defendant's "letters

sent to Schaefer sought no more than voluntary partial repayment" of a "time-barred debt (and d[id] not threaten litigation if the debtor does not comply with the request)").

Importantly, after additional investigation, the CFPB and FTC have not determined that a debt collector must give warning to consumers of the danger of reviving a time-barred debt. The CFPB has agreed that in such circumstances, the debt collector should "inform[] the consumer that, because of the age of the debt, the debt collector cannot sue to recover it," but the agency expressly declined to require any additional warning that partial payment might revive a time-barred debt. The CFPB reasoned:

> Consumers may revive a time-barred debt under state law if they make a payment on it or acknowledge that the debt is theirs. Consumers may believe that these actions would be beneficial to them. To try to correct this impression, collectors could attempt to disclose that these actions in fact could permit collectors to subsequently file a lawsuit because the debt has been revived. *However, the Bureau's testing to date suggests that consumers may not fully understand such a disclosure, because it seems counterintuitive to them.*

Small Business Review Panel for Debt Collector and Debt Buyer Rulemaking, Outline of Proposals Under Consideration and Alternatives Considered, July 28, 2016, at 19 (emphasis added).[3]

The FTC's consent decree in *United States v. Asset Acceptance, LLC*, Case No. 8:12-182 (M.D. Fl. Jan.30, 2012) also omits any requirement for an explicit warning of a revival of the statute of limitations.[4] And in the Consent Decree adopted in *In re: Encore Capital Group*, Consumer Fin. Prot. Bureau, No. 2015-CFPB-0022, at 38-39 (Sept. 3, 2015), the FTC expressly set out rules regarding communications which a debt collector might attempt use to collect a time-barred debt. If the debt may still be included in a consumer credit report, the debt collector should include the statement: "The Law limits how long you can be sued on a debt and how long a debt can appear on your credit report. Due to the age of this debt, we will not sue you for it or report payment or non payment to a credit bureau." *Id.* at 38-

---

[3] *See* https:// files.consumerfinance.gov/f/documents/20160727_cfpb_Outline_of_proposals.pdf.

[4] *See* https://www.ftc.gov/sites/default/files/documents/cases/2012/01/120131assetconsent.pdf.

39. If the debt is both time-barred and no longer reportable, the debt collector should state: "The law limits how long you can be sued on a debt. Because of the age of your debt, we will not sue you for it." *Id*. at 39. The Consent Order does not require any warning of possible revival.

These FTC-approved communications *exactly* match what was contained in the letter sent by Midland: "The law limits how long you can be sued on a debt. Because of the age of your debt, we will not sue you for it."

In summary, the letters sent by Midland do not suggest that they are an attempt to "settle" prospective litigation, and the letters are devoid of any threat of litigation. Boedicker's response to Midland's motion for summary judgment acknowledges that the letter effectively "inform[ed] Plaintiff that the debt is time-barred." (Dkt. 25, at 15). No case has determined that a debt collector must warn of a potential revival of a time-barred claim, and the relevant administrative agency has explicitly declined to require such a warning, precisely because of the danger of consumer confusion. Midland's policies preclude any attempt to sue on the basis of a revived debt, and the letter sent by Midland expressly agrees to avoid any suit — "Because of the age of your debt, we will not sue you for it."[5] The letter sent by Midland closely tracks the letters which were found not to be deceptive in *Olsen* and *Filgueiras*. For these reasons, the court finds that the letter sent by Midland was not deceptive and is not actionable under the FDCPA.

[5] In his Response (Dkt. 25, at 13) to the motion for summary judgment, Boedicker suggests that "[i]t is uncertain what procedures Defendant has in place to actually enforce its policies" prohibiting suit on a revived debt, but this is simply speculation. Boedicker offers no admissible evidence that Midland does not have such a policy, or that it has disregarded it. And regardless of Midland's internal policies, it directly and without qualification committed to avoiding any suit in its letter – "we will not sue you." A partial payment might revive a the statute of limitations under Kansas law, but any attempt by Midland to sue the debtor would render deceptive its earlier promise not to sue, and thus would be prohibited by the FDCPA.

IT IS ACCORDINGLY ORDERED this 30th day of December, 2016, that the defendant's Motion for Summary Judgment (Dkt. 18) is granted; plaintiff's Motion for Summary Judgment (Dkt. 20) is denied.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE